IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

McCALLA CORPORATION and
McCALLA CORPORATION, as a
Member of EMPLOYMENT PRACTICES
RISK MANAGEMENT ASSOCIATION,

                    Plaintiff,

v.                                                    No. 13-1317-SAC

CERTAIN UNDERWRITERS
AT LLOYD'S, LONDON,
Subscribing to Policy No. KAH100513,

                    Defendant.


MEMORANDUM AND ORDER

This declaratory judgment case comes before the court on cross-motions for summary judgment. The primary issue is whether insurance issued by the Defendant obligates Defendant to defend and to pay certain amounts arising from Plaintiff's criminal charges.

**I. Summary Judgment Standard**

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved

only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v.. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will … preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). To the extent the cross-motions overlap, however, the court addresses the legal arguments together. Where the parties file cross motions for summary judgment, the court is "entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997), *cert. denied*, 523 U.S. 1048 (1998).

## II. Uncontested Facts

Plaintiff, McCalla Corporation, is organized under the laws of Kansas. Defendant, Certain Underwriters at Lloyd's London Subscribing to Policy Number KAH100513, issued policies of insurance to Plaintiff. Plaintiff is a defined "Insured" under the Policy as a member of Plaintiff Employment

Practices Risk Management Association (EPRMA), an Illinois unincorporated association.

In August of 2012, Plaintiff received notice that it was a target of a U.S. Immigration and Customs Enforcement investigation. The next month, a search warrant was executed on Plaintiff's premises. Plaintiff retained counsel to defend the criminal investigation and agreed to pay expenses as they were incurred. During the policy period, the federal government filed a one-count information charging Plaintiff with violating 18 U.S.C. § 1546(b)(2) - knowingly aiding and abetting the use of an identification document, having reason to know the document was false, for the purpose of satisfying a requirement of the Employee Eligibility Verification Act program.

On November 1, 2012, pursuant to the notice requirements of the insurance policy, Plaintiff demanded that Defendant assume its duty of defense and pay defense costs for Plaintiff, as provided in the Policy. On December 3, 2012, Plaintiff entered a plea to the criminal charge, admitting the following facts:

> In about March 2011, McCalla Corporation's director of operations (supervisor) met with the manager of one of the McDonald's restaurants it operates in Wichita, Kansas, and told the store manager that the supervisor needed to update the store manager's 1-9 form using current identity documents as required by the Department of Homeland Security Employment Eligibility Verification program, as the documents the store manager had previously used on her 1-9 form were expired or not otherwise valid. Two days later, as proof of employment eligibility, the store manager presented to the supervisor a "resident alien" card that the supervisor knew did not appear to be

genuine, but the supervisor updated the manager's 1-9 form and McCalla Corporation took no further action concerning the manager's employment as a McCalla McDonald's restaurant store manager, a position which she held from May 2009 to September 2012. The supervisor also was aware that it took weeks, not two days, for a foreign national to obtain a "resident alien" card, giving him further reason to know that the resident alien card presented to him by the store manager was not genuine. As a result of the defendant's conduct, it derived or had proceeds traceable to, indirectly or directly, the amount of $100,000.

The Judgment against Defendant ordered a $300,000 fine and a $100,000.00 forfeiture to the United States pursuant to 18 U.S.C. § 982(a)(6)(A). Dk. 23, Exh. 6.

The day after Plaintiff entered its plea, Plaintiff was informed that Defendant declined to provide coverage or a defense. After Defendant waived any mediation requirement delineated in the policy, Plaintiff filed this suit. Plaintiff seeks the following: a declaration that Defendant owed it a duty to defend Plaintiff in the above-referenced criminal proceeding; a finding that Defendant acted in bad faith in not doing so; recovery of its costs of defense ($104,302.58); and reimbursement for or payment of the $100,000 forfeiture ordered by the court in the criminal case.

### III. Governing Law

Plaintiffs assert that the "parties agreed in the pre-trial order that Kansas law applies." Dk. 23, p. 10. But the pretrial order is not so unconditional, stating in relevant part: "[s]ubject to the court's determination of the law that applies to the case, the parties believe and agree that the substantive issues in this case are governed by the following

law: The State of Kansas." Dk. 19, p. 2. The insurance contract at issue contains a choice of law clause stating that "any dispute concerning the interpretation of this Policy shall be governed by the laws of Illinois, U.S.A." Dk. 7, Exh. A, p. 28. Yet neither party acknowledges this language or raises the issue of choice of law, and the Court need not raise it *sua sponte*. *See Flying J Inc. v. Comdata Network, Inc.,* 405 F.3d 821, 831 n. 4 (10th Cir. 2005).

But the court's standard approach in diversity cases is to apply the substantive law, *including choice of law rules*, of the forum state. *See BancOklahoma Mortgage Corp. v. Capital Title Co.,* 194 F.3d 1089, 1103 (10th Cir. 1999). Where, as here, the parties to a contract have entered an agreement that incorporates a choice of law provision, Kansas courts generally effectuate the law chosen by the parties to control the agreement. *Brenner v. Oppenheimer & Co. Inc.*, 273 Kan. 525, 539-540 (2002). Kansas courts will not, however, enforce a choice of law provision shown to be contrary to the public policy of the forum state. *Id,* at 540-41. But that narrow exception applies only when enforcing the foreign law would contravene a prominent public policy— an inconsistency between the chosen law and the forum state's law is not enough. *Alexander v. Beech Aircraft Corp.,* 952 F.2d 1215, 1223 (10th Cir. 1991) (citing Restatement (Second) of Conflict of Laws § 90 [1969]). *See Enterprise Bank & Trust v. Barney*

*Ashner Homes, Inc.*, 2013 WL 1876293, 9 (Kan.App. 2013). No such showing has been made here.

A second exception may also exist. "The *Brenner* court suggested that a choice-of-law provision might be constitutionally suspect if it called for using substantive legal principles from a jurisdiction having no connection to the underlying transaction or the extant dispute. *Brenner,* 273 Kan. at 534–35, 44 P.3d 364." *Enterprise Bank & Trust*, 2013 WL 1876293 at 9. But Plaintiff is a member of an Illinois association through which it is insured, and Defendant is an insurance company whose address for purposes of service of process is in Chicago, Illinois. Dk. 7, pp. 1-2 and Exh. A, pp. 1, 3. The pleadings thus indicate that the State of Illinois has sufficient connection to the underlying transaction to satisfy due process. Accordingly, the Court shall apply the substantive law of the State of Illinois to this dispute, in accordance with the parties' choice of law in the insurance contract.

## IV. Insurance Contracts, generally

The construction, interpretation, or legal effect of a contract is a matter to be determined by the court as a question of law**.** *Avery v. State Farm Mutual Automobile Insurance Co.,* 216 Ill.2d 100, 129 (2005). The general rules in Illinois for construing the language of an insurance policy are well-established.

> When construing the language of an insurance policy, a court's primary objective is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy. *Hobbs v. Hartford Insurance Co. of the Midwest,* 214 Ill.2d 11, 17, 291 Ill.Dec. 269, 823

N.E.2d 561 (2005). Because the court must assume that every provision was intended to serve a purpose, an insurance policy is to be construed as a whole, giving effect to every provision (*Central Illinois Light Co.,* 213 Ill.2d at 153, 290 Ill.Dec. 155, 821 N.E.2d 206), and taking into account the type of insurance provided, the nature of the risks involved, and the overall purpose of the contract (*American States Insurance Co. v. Koloms,* 177 Ill.2d 473, 479, 227 Ill.Dec. 149, 687 N.E.2d 72 (1997)). If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning, and the policy will be applied as written, unless it contravenes public policy. *Hobbs,* 214 Ill.2d at 17, 291 Ill.Dec. 269, 823 N.E.2d 561. "Although policy terms that limit an insurer's liability will be liberally construed in favor of coverage, this rule of construction only comes into play when the policy is ambiguous." *Id.*

*Knezovich v. Hallmark Ins. Co.*, 975 N.E.2d 1165, 1171, 363 Ill.Dec. 856, 862 (Ill.App. 1 Dist. 2012).

The entire document is to be examined to determine the parties' intentions with consideration given to the contract's subject matter and purpose as well as the policy's language. *Hannigan v. Country Mutual Insurance Co.,* 264 Ill.App.3d 336, 339, 201 Ill.Dec. 465, 636 N.E.2d 897 (1994). If an insurance policy's language is capable of more than one reasonable interpretation, then the interpretation that favors coverage prevails. *Outboard Marine Corp. v. Liberty Mutual Ins. Co,* 154 Ill.2d 90 at 119, 180 Ill.Dec. 691, 607 N.E.2d 1204 (1992). All doubts and uncertainties in an insurance policy's language must be construed strictly against the drafter and in favor of coverage. *Id*, 154 Ill.2d at 121.

Plaintiff asserts that Defendant's duties in this case arise under two policy provisions: the Employment Practices Liability (EPL) section, and the Directors' and Officers' (D & O) section.

## V. Employment Practices Liability Coverage

The EPL section generally provides that Defendant will pay all "loss that an Insured becomes legally obligated to pay as a result of Claims first made against such Insured during the Policy Period … for a Wrongful Employment Practice." Dk., 7, Exh. A, p. 17. The policy defines "Claim" to include "the filing of a criminal lawsuit … provided, however that the discretion to consider such lawsuit … a Claim shall be in the sole discretion of Underwriters and must be agreed to by the Insured Company." *Id.* It defines "loss" to include judgments and defense costs. *Id.* And it defines "Wrongful Employment Practices" to include "wrongful failure or refusal to adopt or enforce adequate workplace or employment practices, policies or procedures." Plaintiff contends that the filing of the criminal information was a "claim," that its criminal act was a "wrongful employment practice," and that the forfeiture amount and defense costs are "losses."

### A. Wrongful Employment Practices

But Plaintiff ignores other definitional language which squarely defeats its contentions. An additional proviso applies to all defined "Wrongful Employment Practices," stating they are covered " … *but only if* employment-related and claimed by or on behalf of an Employee, Former

Employee, or applicant for employment …" Dk. 7, Exh. A, p. 18 (emphasis added). The criminal lawsuit brought against the Plaintiff was not "claimed by or on behalf of" any enumerated person, having been brought instead by the United States Attorney on behalf of the United States of America. Plaintiff has shown no arguably reasonable interpretation of this section of the policy which would justify reading this plain language out of the contract, as is necessary to trigger Defendant's duty to defend. And doing so would defeat the purpose of EPL coverage, which is necessarily limited to enumerated acts claimed by employees, former employees and prospective employees.

### B. Loss

Similarly, Plaintiff ignores the definition of "loss" for purposes of this section, which states that "Loss does not include: (1) fines, penalties, or taxes … [or] (10) any relief, whether pecuniary or injunctive, imposed or agreed to in connection with criminal lawsuits or proceedings." Dk. 7, Exh. A, p. 16. The forfeiture is excluded as a fine or penalty, *see* discussion below at VI B 1, 2, and defense costs are excluded because they constitute relief imposed in connection with a criminal lawsuit, *see Illinois Union Ins. Co. v. Cliff Berry Inc.*, 2006 WL 3667230, 5 -6  (S.D.Fla. 2006) ("Because it excludes any payments *in connection* to a criminal act as determined by a final judgment, Illinois Union would be owed repayment of those legal fees and expenses that it expended in defense of the Insureds.").

Accordingly, the court finds as a matter of law that Defendant did not breach any duty under the EPL section of the policy. The court finds it unnecessary to address Plaintiff's contention that the sole discretion clause in the policy's definition of "Claim" violated public policy so is void. Similarly, the Court finds it unnecessary to reach Defendant's alternative argument that various exclusions, such as the criminal adjudication exclusions, apply.

## VI. Directors' and Officers' Liability Coverage

Plaintiff next contends that Defendant breached its duties under the policy's D & O section, which generally obligates Defendant to "pay all Loss resulting from Claims first made against the Insured Company during the Policy Period … for Wrongful Acts."

### A. Claim

Plaintiff contends that the criminal information is a claim because "Claim" is defined to include "a civil, criminal, administrative or regulatory proceeding commenced against any Insureds in which they may be subjected to binding adjudication of liability for damages or other relief …" Dk. 7, Exh. A, p. 20. Plaintiff contends that a criminal proceeding was commenced against it "which subjected it to a binding adjudication of liability when the information was filed." Dk. 23, p. 15. But Plaintiff does not attempt to show how the filing of an information subjected it to an adjudication of liability "for damages or other relief …" as the policy requires.

"A criminal complaint does not seek damages. It is penal in nature."

*Spiegel v. State Farm Fire and Casualty Co.,* 277 Ill.App.3d 340, 341 (1995)

(quoting *Shelter Mutual Insurance Co. v. Bailey,* 160 Ill.App.3d 146, 156

(1987)). And cases examining identical policy language, noted below, do not

support the construction that a criminal case could be "other relief" within

the meaning of this phrase.

In *Foster v. Summit Medical Systems, Inc.,* 610 N.W.2d 350

(Minn.Ct.App. 2000), the policy defined "claim" to include an administrative

proceeding relating to the sale of securities "in which [the insureds] may be

subjected to a binding adjudication of liability for damages or other relief").

*Id.* at 354. The Court narrowly construed "relief" to require a binding

adjudication of liability for other relief.

> In a legal context, the term "relief" refers to redress or benefit,
> especially equitable redress such as an injunction or specific
> performance. *See* Black's Law Dictionary 1293 (7th ed.1999). Issuing
> a subpoena does not fit within either meaning of the term "relief." *See*
> *City of Thief River Falls v. United Fire & Cas. Co.,* 336 N.W.2d 274, 276
> (Minn. 1983) (holding that petition for mandamus to compel city to
> initiate condemnation proceedings was not a "suit * * * seeking
> damages" within the plain meaning of the insurance policy because its
> essence was to secure performance of a legally required act rather
> than provide damages).

*Foster,* 610 N.W.2d at 354. *Foster* held that an SEC investigation was not a

proceeding in which respondents "may be subjected to a binding

adjudication for * * * relief." Accordingly, the insurance coverage claim was

barred.

The Northern District of Illinois subsequently found *Foster's* narrow view of "relief" appropriate, given the policy language.

> The *Foster* decision focused on the use of "relief" in defining claim, but considered it as part of a phrase that included "binding adjudication." *See Foster,* 610 N.W.2d at 354 ("The parties agree that the SEC investigation is an administrative proceeding but dispute whether it is a proceeding in which respondents 'may be subjected to a binding adjudication for * * * relief.' "). The *Foster* court took a narrow view of "relief," construing it in the context of an adjudication, which was appropriate given the language of the policy there under consideration.

*Minuteman Intern., Inc. v. Great American Ins. Co.*, 2004 WL 603482, 5 (N.D.Ill. 2004) (finding a subpoena was a demand for relief, under policy language different from the policy here).

Similarly, in *Center for Blood Research, Inc. v. Coregis Insurance Co.*, 305 F.3d 38 (1st Cir. 2002), the definition of "claim" in the policy included "any judicial or administrative proceeding in which any INSURED(S) may be subjected to a binding adjudication of liability for damages or other relief." The Circuit held this language required the potential relief to be the product of a binding adjudication in a proceeding. *Id*, at 43. There, the U.S. Attorney had served an investigative subpoena on the insured, who was not a target of the investigation and was not charged civilly or criminally. *See id.* at 40-41. In holding that there was no claim, the First Circuit focused on the lack of an adjudication for liability, *see id.* at 42-43. The Court noted "[w]e do not imply that our result would be different … if the investigation led to the

government bringing civil or criminal proceedings against it." 305 F.3d 38, 42 n. 5.

In *Illinois Union Ins. Co. v. Cliff Berry Inc.*, 2006 WL 3667230, 4 (S.D.Fla. 2006), the court examined an identical definition of "claim." It found the criminal information was a "claim" only because the information sought restitution, which it considered to be "other relief" under the terms of the policy. In contrast, the information in this case sought no restitution, and none was ordered.

Plaintiff contends that cases examining "similar[ly] worded policies" have found that the issuance of a search warrant constitutes a claim, citing *Protection Strategies, Inc. v. Starr Indemnity and Liability* Co., 2013 CV 00763 (E.D. Va. Sept. 10, 2013). Dk. 23, p. 14. But that policy's definition of "claim" defined "claim" to include any "judicial administrative, or regulatory proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief commenced against an Insured ... by ... return of an indictment, information, or similar document (in the case of a criminal proceeding)." Dk. 29, Att. 1, p. 3. Because that broader definition does not require a binding adjudication of liability for damages or other relief, it is significantly different than the relevant definition in this case.

The only other case cited by Plaintiff, *Syracuse Univ. v. Nat'l Union Fire Ins. Co.*, 2013 N.Y. Slip Op. 51041(U), 2013 WL 3357812 (N.Y. Sup. Ct. Mar. 7, 2013), is also dissimilar to the present policy in its definition of

"claim." These and other cases are inapposite because they involve insurance policies that do not define "claim," or define "claim" differently than the insurance policy at issue here.

Plaintiff has shown no reasonable construction of the definition of "claim" in the D & O policy which would permit the Court to find that the search warrant process or the filing of the information in this case, which did not seek restitution, could subject the Plaintiff to an adjudication of liability for damages or to an adjudication of liability for other relief, as the policy requires. No language in the information, in the superseding information, or used in connection with issuing or executing the search warrant thus gives rise to the possibility of coverage for the Plaintiff under the D & O policy.

**B. Loss**

Defendant additionally contends that the $100,000 forfeiture is not a "loss" because "loss" is defined to exclude "taxes, fines or penalties imposed by law," and to exclude "matters uninsurable under the law pursuant to which this Policy is construed." Dk. 7, Exh. 1, p. 21.

**1. Tax, Fine, or Penalty**

Plaintiff contends the forfeiture is not a "tax, fine or penalty" imposed by law, but concedes the $300,000 fine it was required to pay as a result of its criminal conviction is excluded by this language.

The criminal forfeiture ordered in Plaintiff's criminal case was not imposed pursuant to a civil proceeding *in rem*, but was part of the punishment for Plaintiff's criminal offense. *See* Dk. 23, Judgment, p. 3. An *in personam* criminal forfeiture is a form of punishment that does not differ from a fine. See *Alexander v. United States* (1993), 509 U.S. 544, 558-559, 113 S.Ct. 2766, 2775-2776, 125 L.Ed.2d 441, 455-456; *United States v. Wild,* 47 F.3d 669, 674 (4th Cir. 1995). *In personam* forfeitures involve "assessments, whether monetary or in kind, to punish the property owner's criminal conduct." *Austin v. United States,* 509 U.S. 602, 624, 113 S.Ct. 2801, 2813, 125 L.Ed.2d 488, 507 (1993) (Scalia, J., concurring). *See* Black's Law Dictionary 722 (9th ed. 2009) (defining "forfeiture" as "3. Something lost or confiscated by this process; a penalty.").

Criminal forfeiture is mandatory in all cases where it applies, *United States v. Monsanto,* 491 U.S. 600, 607, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989), and operates *in personam* against a defendant to divest him of his title to proceeds of crime or property involved in his crime or that facilitated his unlawful conduct, *United States v. Vampire Nation,* 451 F.3d 189, 202 (3d Cir. 2006). "Forfeitures flow from the notion that property is somehow irreparably tainted-whether malum in se or malum prohibitum-so that no private ownership can be claimed and the property reverts to the sovereign." *St. Paul Fire & Marine Ins. Co. v. Genova*, 172 F.Supp.2d 1001, 1005 (N.D.Ill. 2001).

In the Plaintiff's underlying criminal case, the court ordered Plaintiff to forfeit to the United States $100,000.00 pursuant to Title 18, U.S.C § 982(a)(6)(A), as is mandated by statute for all defendants convicted of such offenses. *See* 18 U.S.C § 1546(b)(2).

> The court, in imposing sentence on a person convicted of a violation of [various statutes] shall order that the person forfeit to the United States, regardless of any provision of State law--
>
> **(ii)** any property real or personal--
>
> **(I)** that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense of which the person is convicted.

18 U.S.C. § 982(a)(6)(A). Thus Congress has determined that the criminal activity in which the Plaintiff admittedly engaged strips the lawbreaker of his ownership interest as a punishment, vesting ownership of the forfeitable property in the government. See *United States v. Ginsburg*, 773 F.2d 798, 800–03 (7th Cir. 1985). Accordingly, this court does not hesitate to find that the forfeiture ordered in this case was a "fine or penalty" as those terms are used in this policy and thus is excluded from the policy's definition of "loss." *Cf, Mortenson v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 249 F.3d 667, 668-669 (7th Cir. 2001) (applying Illinois law in finding a statutory penalty imposed for willful nonpayment of payroll taxes excluded as a "fine or penalty" in the D & O policy).

## 2. Matters Uninsurable Under Illinois Law

Defendant also contends that the forfeiture is not "loss" because loss is defined to exclude "matters uninsurable under the law pursuant to which this Policy is construed." Dk. 7, Exh. 1, p. 21. The Court agrees.

Illinois has held that there is no insurable interest in a civil forfeiture. *Indiana Ins. Co. v. Brown Packing Co., Inc.,* 2013 WL 1944469, 5 - 6 (Ill.App. 1 Dist. 2013). There, the Illinois court found a $2 million civil forfeiture represented the amount of funds gained through illegal activity so was not "damages" within the meaning of the insurance policy. The Court further found that forfeiture was not insurable as a matter of Illinois law and public policy, since the underlying complaint was a criminal prosecution. *Id*, at 5-6.

Similarly, under Illinois law, there is no insurable interest in the proceeds of fraud. *Ryerson, Inc., v. Federal Insurance Co.,* 676 F.3d 610, 613 (7th Cir. 2012) (applying Ill. law). The rationale for that holding - that one cannot sustain a loss of something he doesn't or shouldn't have – applies equally in this case:

> If disgorging such proceeds is included within the policy's definition of "loss," thieves could buy insurance against having to return money they stole. No one writes such insurance. See *Scottsdale Indemnity Co. v. Village of Crestwood,* 673 F.3d 715, 717–18, 719–20 (7th Cir. 2012) (Illinois law); *Federal Ins. Co. v. Arthur Andersen LLP,* 522 F.3d 740, 743–44 (7th Cir. 2008) (ditto); *Mortenson v. National Union Fire Ins. Co.,* 249 F.3d 667, 671–72 (7th Cir. 2001) (ditto), and no state would enforce such an insurance policy if it were written. *Id.* at 672; *Level 3 Communications, Inc. v. Federal Ins. Co.,* 272 F.3d 908, 910 (7th Cir. 2001). You can't, at least for insurance purposes, sustain a

"loss" of something you don't (or shouldn't) have. *Id.; In re TransTexas Gas Corp.,* 597 F.3d 298, 308–11 (5th Cir. 2010); *Safeway Stores, Inc. v. National Union Fire Ins. Co.,* 64 F.3d 1282, 1286 (9th Cir. 1995). And so there is no insurable interest in the proceeds of a fraud. Cf. *Grigsby v. Russell,* 222 U.S. 149, 154–55, 32 S.Ct. 58, 56 L.Ed. 133 (1911) (Holmes, J.); 3 *Couch on Insurance* §§ 41:3, 42:57, pp. 41–12, 42–96 (3d ed.2011).

*Ryerson*, 676 F.3d at 612-13.

The rationale underlying these policy decisions was clarified in *Beaver v. Country Mutual Insurance Co.,* 420 N.E.2d 1058, 1061 (Ill.App.Ct. 1981), where the Court held that "public policy prohibits insurance against liability for punitive damages that arise out of one's own misconduct." *Id*, at 1061. In reaching its decision, the court explained that the purpose of punitive damages is to punish and deter - a purpose that would not be served if the wrongdoer were allowed to shift the burden of the sanction to an insurance company. *Id.* at 1060. *Cf, Chicago Bd. of Options Exchange, Inc. v. Harbor Ins. Co.,* 738 F.Supp. 1184, 1187 (N.D.Ill. 1990) (finding no public policy in Illinois against a corporation's insuring for vicarious liabilities stemming from the intentional torts of its officers and directors, such as retaliatory discharge). The *Beaver* court further reasoned: "It is not disputed that insurance against criminal fines or penalties would be void as violative of public policy. The same public policy should invalidate any contract of insurance against the civil punishment that punitive damages represent." *Id.* (citation and internal quotation marks omitted). *See Local 705 Intern. Broth. of Teamsters Health & Welfare Fund v. Five Star Managers, L.L.C.,* 316

Ill.App.3d 391, 395, 735 N.E.2d 679, 683, 249 Ill.Dec. 75, 79 (Ill.App. 1 Dist. 2000) (finding settlement was paid with money to which the payor was not legally entitled and that such a payment is not a "loss" but was a "matter uninsurable under the law" of Illinois). *See generally State Farm Life Ins. Co. v. Smith*, 66 Ill.2d 591, 595, 363 N.E.2d 785, 786, 6 Ill.Dec. 838, 839 (Ill. 1977) (stating "the long-established policy that one may not profit by his intentionally-committed wrongful act.")

The same rationale applies here. The Plaintiff, and not its officers or directors, admittedly committed the crime. The purpose of criminal forfeiture is to punish the criminal by depriving him of proceeds of his crime. That purpose would not be served if the wrongdoer were permitted to shift the burden of forfeiture to an insurance company. Accordingly, the policy excludes the possibility that Defendant is obligated to pay the $100,000 forfeiture ordered against the Plaintiff in the underlying criminal case.

This result is consistent with Illinois public policy which excludes from coverage intentional torts such as claims for "bodily injury, assault, battery, invasion of privacy, mental anguish, emotional distress, sickness, disease or death of any person, false arrest, false imprisonment, defamation, libel, slander or damage to or destruction of any tangible property, including loss of use thereof." *Id*, pp. 21-22. See *Davis v. Commonwealth Edison Co.*, 61 Ill.2d 494, 500–01, 336 N.E.2d 881, 885 (1975) (stating general rule that one may not insure himself for his own intentional torts under Illinois law).

Additionally, it would be unreasonable to read this policy, which excludes intentional torts, as covering forfeiture resulting from criminal acts. *See generally Fox v. Commercial Coin Laundry Systems,* 325 Ill.App.3d 473, 476, 258 Ill.Dec. 840, 757 N.E.2d 529 (2001). Accordingly, no possibility of coverage for the amount of forfeiture existed under the D & O section.

In determining lack of coverage, the Court finds it unnecessary to reach the parties' other arguments, including Defendant's reliance on the criminal adjudication exclusions and its assertion that insuring losses from criminal cases would shock the Geiko gecko and its cohort insurance mascots. Dk. 27, p. 5.

## VII. Duty to Defend

An insurer's duty to defend its insured is determined by comparing the allegations of the underlying complaint with the relevant provisions of the insurance policy. *Dixon Distributing Co. v. Hanover Insurance Co.,* 161 Ill.2d 433, 438, 204 Ill.Dec. 171, 641 N.E.2d 395 (1994). An insurer may refuse to defend only when the allegations of the lawsuit "cannot possibly cover the liability arising from the facts alleged." *Illinois Emcasco Insurance Co. v. Northwestern National Casualty Co.,* 337 Ill.App.3d 356, 360, 271 Ill.Dec. 711, 785 N.E.2d 905 (2003). If the underlying complaint alleges facts within or potentially within coverage, the insurer is obligated to defend its insured even if the allegations are groundless, false, or fraudulent. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.,* 144 Ill.2d 64, 73, 161

Ill.Dec. 280, 578 N.E.2d 926 (1991). Any doubt about whether allegations in a complaint state a potentially covered cause of action is ordinarily resolved in favor of the insured. *Pekin Ins. Co. v. United Parcel Service, Inc.,* 381 Ill.App.3d 98, 885 N.E.2d 386 (2008).

The Court has reviewed the copy of the criminal information attached to Plaintiff's brief, Dk. 23, Exh. C, and takes judicial notice of the superseding information, *see St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir. 1979) (court may take judicial notice of filings in related cases). Yet it finds no allegations of facts within or potentially within either the D & O section or the EPL section of the policy. The facts asserted in these criminal documents are not arguably included within the EPL section's definitions of "Wrongful Employment Practices" or "Loss," or within the D & O section's definition of "Claim." Nor has Plaintiff shown that anything connected with the search warrant process which preceded the filing of the criminal information possibly triggered coverage under either section of the policy. Accordingly, Defendant had no duty to defend.

But even had the Court found a duty to defend, Plaintiff has shown no damages from any breach of that duty. The parties agree that Plaintiff's plea and sentencing constitute a final adjudication of a criminal act. Plaintiff's criminal acts therefore currently fall within the "final adjudication" exclusions in both the EPL and D & O sections. Accordingly, had Defendant paid the

costs of Plaintiff's defense of the criminal case and investigation, Plaintiff would need to repay those amounts now. See *American Family Mut. Ins. Co. v. Enright*, 334 Ill.App.3d 1026, 1038 (Ill.App. 2 Dist. 2002) (finding the trial court erred in finding a duty to defend in the underlying criminal lawsuit because the duty only arises if the allegation is proved to be false).

Under dishonest acts exclusions, which the court finds to be similar to this exclusion, the insurer is bound to cover defense costs in cases in which an insured is found not guilty. *See e.g., In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 391 F.Supp.2d 541, 570-571 (S.D.Tex. 2005) (finding a policy exclusion which barred coverage for the ultimate net loss arising from any claim against an insured for "any fines or penalties imposed in a criminal suit, action, or proceeding," excluded costs incurred in the defense of criminal prosecutions against the insured that resulted in a conviction but that the exclusion did not apply where the insured was found not guilty); *Polychron v. Crum & Forster Ins. Companies*,916 F.2d 461, 463–64 (8th Cir. 1990) (finding the exclusion for "fines or penalties imposed by law," "does not exclude attorney's fees incurred in defense of a criminal matter, at least where the insured is acquitted"). But Plaintiff cites no case in which a breach of a duty to defend or to pay defense costs was found where the insured was found guilty of the criminal offense and the policy contained a criminal adjudication exclusion, as here. Accordingly, Plaintiff has shown no damages.

## VIII. Bad Faith

Plaintiff further contends that Defendant acted in bad faith in denying coverage. Plaintiff alleges Defendant unreasonably delayed its denial of coverage until after Plaintiff's plea, then explained its denial by construing its policy in a duplicitous manner.

Bad faith is "the semantic equivalent of 'vexatious and unreasonable' conduct." *Emerson v. American Bankers Insurance Co. of Florida,* 223 Ill.App.3d 929, 936, 166 Ill.Dec. 293, 585 N.E.2d 1315 (1992). Given the Court's finding above that Defendant had no duty to defend and properly denied coverage, no bad faith has been shown. *See First Ins. Funding Corp. v. Fed. Ins. Co.,* 284 F.3d 799, 807 (7th Cir. 2002) ("Illinois courts allow a cause of action to proceed under Section 155 only if the insurer owed the insured benefits under the terms of the policy."); *Central Mut. Ins. Co. v. Useong Intern., Ltd.,* 394 F.Supp.2d 1043 (N.D.Ill. 2005) (finding "[b]ecause this Court has held that Central has no duty to defend or indemnify UI, UI I not entitled to any relief under Section 155."); *Hermitage Ins. Co. v. Action Marine, Inc.,* 816 F.Supp. 1280 (N.D.Ill. 1993) (finding an insured cannot recover on a bad faith denial of coverage claim under the Insurance Code where the insurer rightfully denies coverage); *McDaniel v. Glens Falls Indem. Co.,* 333 Ill.App. 596, 602 78 N.E.2d 111 (1948) (rejecting bad faith claim of vexatious delay where insured was not covered under the policy). *See also* Sec. 155 of the Ill. Ins. Code, 215 ILCS 5/155 (2005) ("In any

action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus [certain penalties] …).

IT IS THEREFORE ORDERED that Plaintiff's motion for summary judgment (Dk. 22) is denied and that Defendant's motion for summary judgment (Dk. 20) is granted.

Dated this  1st  day of May, 2014, at Topeka, Kansas.


s/Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge